UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CARL JULIUS ROGERS, JR., | ) | Civil Action No.: 4:08-cv-3891-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ANTHONY COTTON, TIM KEMP, | ) | |
| JASON STEPHENS, BRIAN RUDICK, | ) | |
| JIM PENNINGTON, and JACKIE GAUSE, | ) | |
| in their individual and official capacities; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| CARL JULIUS ROGERS, JR., | ) | Civil Action No.: 4:09-cv-1290-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | |
| CITY OF HARTSVILLE, HARTSVILLE | ) | |
| POLICE DEPARTMENT and ANTHONY | ) | |
| COTTON, in his individual and official | ) | |
| capacity; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se[1], filed these actions pursuant to 42 U.S.C. § 1983, alleging

claims of excessive force, deliberate indifference to serious medical needs, and due process

violations.   Plaintiff also asserts pendant state law claims.   Presently before the Court are

_____

[1]Plaintiff filed the first action pro se.  The second action was initially filed by counsel in
state court and removed to this court by Defendants.  Counsel in the second action moved for and
was granted leave to withdraw as counsel.

Defendants' Motion for Summary Judgment  (Document # 108 in 08-3891-RBH-TER and Document # 77 in 09-1290-RBH-TER) and Plaintiff's Motion for Summary Judgment (Document # 121 in 08-3891-RBH-TER and Document # 89 in 09-1290-RBH-TER).

Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to Defendants' Motion could result in a recommendation that the Motion be granted.  Plaintiff filed a Motion for Extension of Time to respond to Defendants' Motion for Summary Judgment, which was granted in part.[2]  Plaintiff has not filed a Response to the Motion for Summary Judgment, but has filed his own Motion for Summary Judgment, which the Court will also read as a Response to Defendants' Motion.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC.  Because the present Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS

### A.    The Events of November 26, 2006

#### 1.    Defendants' Version

On the evening of November 25, 2006, and the early morning hours of November 26, 2006, Officer Anthony Cotton was on routine patrol with the Hartsville Police Department.  Cotton Aff. ¶ 2 (attached as Exhibit A to Defendants' Motion). Constable Jason Stephens was riding with him. Cotton Aff. ¶ 2. After midnight, Officer Cotton was patrolling on South Fifth Street.  Cotton Aff.

---

[2]Plaintiff requested an additional sixty days to respond, and the Court granted him an additional thirty days.

¶ 3.  He observed a vehicle with its high beams on not moving in the roadway. Incident Report (attached as an Exhibit to Cotton's Affidavit).[3] Officer Cotton pulled up beside the vehicle to inform the driver, Plaintiff, his bright lights were on.  Plaintiff never looked at him and pulled off making a hard left turn. Incident Report; Cotton Aff. ¶. 3. Cotton then turned around. He attempted to make a traffic stop. Plaintiff then ran a stop sign. Cotton's blue lights were on. He then activated his siren in an attempt to make the traffic stop. Plaintiff sped up and began to flee. Officer Cotton, with Constable Stephens with him, began to chase. Incident Report; Cotton Aff. ¶ 3.  During that chase the car camera was activated so that a video and audio recording was made of a portion of the chase. Cotton Aff. ¶ 3. Plaintiff fled at a high rate of speed through a residential area, running several stop signs in the process. Cotton Aff. ¶ 3; Audio and Video Recording (attached as an Exhibit to Cotton's Affidavit).  When he was approaching the stop sign at the "T" intersection of Marlboro Avenue and Eleventh Street, Officer Cotton slowed down because they were traveling too fast to be able to make that turn. Incident Report; Cotton Aff. ¶ 3.  Plaintiff ran straight through the "T" intersection and into the yard and parking lot of Carolina Elementary School. Cotton Aff. ¶ 3; Incident Report.  Plaintiff wrecked his vehicle at Carolina Elementary School.  Cotton Aff. ¶¶ 3, 7. Plaintiff then began to flee on foot.  Cotton Aff. ¶¶ 3,7.  Officer Cotton pulled his patrol car in front of Plaintiff in an attempt to cut him off. Cotton Aff. ¶ 7; Incident Report.  Plaintiff ran into the side of the patrol car, then proceeded around the back of the vehicle and continued running away.  Incident Report; Cotton Aff. ¶¶ 3,7. Officer Cotton pursued Plaintiff on foot.  Cotton Aff. ¶¶ 3, 7.  He was able to catch Plaintiff and tackle him from behind to subdue him.  Cotton Aff. ¶¶ 3,7.  Officer Cotton and Constable

---

[3]Officer Cotton avers that the Incident Report is an accurate summary of what transpired that night.  Cotton Aff. ¶ 6.

Stephens attempted to assist Plaintiff to his feet, but he complained of an injury.  Incident Report; Audio and Video Recording.  EMS was called to the scene.  Cotton Aff. ¶ 8. EMS evaluated Plaintiff and transported him to the hospital. Incident Report; Cotton Aff. ¶ 8.

Cotton ran a status check on Plaintiff's driver's license and license tag, which revealed that Plaintiff had a suspended driver's license and his tag was cancelled.  Incident Report. There was a strong smell of alcohol from the vehicle and it appeared that a beer had been spilled in the floor board.  Incident Report.

A blood sample was taken from Plaintiff at Carolina Pines Hospital and placed into evidence. Incident Report.  The SLED analysis of that blood revealed a blood alcohol of .196, more than twice the legal limit. Cotton Aff. ¶ 9; SLED Forensic Services Laboratory Report (attached as an Exhibit to Cotton Affidavit).  Plaintiff was charged with failure to stop for a blue light 2nd, DUS 3rd, DUI 3rd, operating uninsured, suspended vehicle license and failure to dim headlights. Incident Report.

## 2.     Plaintiff's Version

Plaintiff has set forth more than one version of the events on November 26, 2006.  According to Rudick as set forth in his Complaint Review, Plaintiff alleges that he was involved in a single car accident and that he was attempting (on foot) to find a phone to call for help when he was hit from behind.  Complaint Review.  He informed Officer Cotton, who was alone, the he dislocated his right shoulder.  Complaint Review.  In his Amended Complaint, Plaintiff alleges that he was involved in a single car accident on Marlboro and Eleventh Streets, and got out of his vehicle to inspect the damage.  Amended Complaint ¶ 11.  He walked away from and back towards the car several times and was struck from behind and then tackled by a large man.  Amended Complaint ¶¶ 12-15. Plaintiff stated "you just dislocated my right shoulder" and then passed out and awoke in the

-4-

ambulance. Amended Complaint ¶¶ 16-18. He was later told that he was struck from behind by Officer Cotton's patrol car. Amended Complaint ¶ 22. In his deposition, he testifies that as he was walking towards the front of the school, he heard a motor roar and saw Cotton and tried to sidestep him, but Cotton hit him in his left hip. Plaintiff Dep. I p. 89.

Later, in his deposition, Plaintiff testified that he was not driving the vehicle involved in the incident on November 26, 2006. Plaintiff Dep. I pp. 91-92 (attached as Exhibit I to Defendants' Motion). Rather, because he had been drinking and did not want to drive for fear of getting a DUI, he got into the passenger seat and laid the seat back to go to sleep. Plaintiff Dep. I p. 91. An unknown woman tapped on his window and asked for a ride so he allowed her to drive herself home in his vehicle. Plaintiff Dep. I pp. 91-92. Plaintiff testified that this woman crashed his vehicle at the school, but he does not know what happened to her after she crashed the car. Plaintiff Dep. I p. 92. Officer Cotton drove his patrol car straight at him and ran him down with the front of his vehicle. Plaintiff Dep. pp. 161-163.

### 3.     Audio and Video Recording from Officer Cotton's Patrol Car

Defendants submit an audio and video recording from Officer Cotton's Patrol car taken on November 26, 2006, beginning at 00:18:10. The recording reveals the pursuit of a vehicle. The blue lights and siren are activated on the patrol car. Two male voices can be heard inside the patrol car. The vehicle runs several stop signs during the pursuit. As the vehicle reaches the "T" intersection, it runs onto the property of what one of the officers identifies as Carolina Elementary School. The vehicle appears to hit something near the school building, turn around, and then hit a tree before coming to a stop. As the patrol car turns, the vehicle is no longer in the view of the camera. One of the officers states that the driver is getting out of the car and is on foot. The driver of the vehicle

never appears on the video.  The patrol car then comes to a stop.  An officer repeatedly tells the

driver to get up and another voice is heard saying "I can't" and "my leg hurts."  A male and female

officer are seen briefly on camera, and a female voice is heard saying "Carl" and "stop resisting."

Another voice is heard saying "I'm not resisting" and "my left leg hurts" and "I can't walk." The

audio and video recording ends at 00:20:57.

### B.    Plaintiff's Complaint of Misconduct

Over a year later, Plaintiff complained of misconduct to Chief Tim Kemp of the Hartsville

Police Department.  See Plaintiff's Amended Complaint, ¶¶ 93, 94. Chief Kemp advised him to file

a complaint. Plaintiff filed a citizen's complaint on March 26, 2008.  Rudick Depo. p. 32 (attached

as Exhibit C to Defendants' Motion); Rudick Aff. ¶ 2 (attached as Exhibit 1 to Defendants'

Response to Plaintiff's Motion for Summary Judgment).[4] That complaint was investigated by

Defendant Lieutenant Brian Rudick. Rudick Aff. ¶ 3.  Based upon his review of the incident reports,

talking with the officers involved and his review of the video and audio recording, Rudick found no

need to turn the complaint over for an internal affairs investigation.  Rudick Aff. ¶ 3.  He issued a

Complaint Review indicating that he found no wrongdoing. Complaint Review (attached as an

Exhibit to Rudick Affidavit).  The Complaint Review is neither signed by Rudick nor dated.

Complaint Review.

Plaintiff complained to Chief Kemp about Rudick's Complaint Review. Chief Kemp did not

overturn the report.  Plaintiff next approached then City Manager Jim Pennington about Chief

---

[4]When Defendants filed their Motion for Summary Judgment, Rudick was out of state and
unable to return the executed Affidavit, and therefore, an unsigned copy of his Affidavit was
submitted as Exhibit D.  Defendants subsequently submitted Rudick's executed Affidavit with their
Response to Plaintiff's Motion for Summary Judgment.

Kemp's failure to overturn the findings of Rudick's report. Amended Complaint, ¶ 120. Pennington also declined to overturn the findings in the Complaint Review. Plaintiff's Amended Complaint, ¶¶ 122, 123.

### C.    Fabricated Evidence

Plaintiff asserts that much of the evidence regarding the events of November 26, 2006, has been fabricated. He claims that the scene on the audio and video recording was recreated when he was not present.[5] Plaintiff Dep. I. p. 127. Plaintiff asserts that he saw a different version of the recording in his lawyer's office.[6] However, when he returned to see it a second time, it had disappeared and been replaced with the recording that exists today and is in this record. Plaintiff Dep. I p. 22-23. Plaintiff also secured his own copy of the recording from the Solicitor, which he asserts was different than the one submitted by Defendants. Plaintiff claims that he has maintained that recording in his possession since receiving it. However when reviewing it in his deposition, Plaintiff contended that it had transformed while in his possession to be consistent with the version submitted by Defendants. Plaintiff testified that he watched the DVD change before his eyes:

```
                                 173
22      Q: And that's on DVD?
23      A: That's on the DVD. And that's on the DVD,
24      that's got everybody keeps saying Officer
25      Cotton is the one that called EMS. And the --
                                 174
1       on the DVD, it did have that to start with, but
```

_____

[5]Plaintiff asserts the scene was recreated on more than one occasion. He claims it was done immediately after the accident when he was taken to the hospital. Plaintiff Dep. I p. 127. He also claims his lawyer, who helped Defendants falsify evidence, told him to go to a rehabilitation facility out of town so they could falsify the videos more than once. Plaintiff Dep. I p. 79.

[6]Plaintiff retained an attorney to represent him on his criminal charges. However, that attorney subsequently moved for and was relieved as counsel.

2     the more I watched it, and it started
3     disappearing, and I kind of freaked out. I
4     wanted to quit watching it because it was
5     disappearing, but I couldn't. I just had to
6     keep studying the thing. And what came out was
7     Officer Gause calling EMS, not Officer Cotton.
8     And you hear all kind of little clicking noises
9     where the video changed from one thing to
10    another.

Plaintiff's Dep. I p. 173-174.  Discussing that further, Plaintiff said:

6

8     Q: Okay. You also had mentioned something about
9     being able to see something else that had
10    recorded over or something else that came out.
11    What was that about?
12    A: It's been a while back. When I first got that
13    DVD you would hear Officer Cotton calling for
14    EMS. Then that slowly disappeared, and what
15    came out was Jackie Gause calling for EMS.
16    It's like when you tape over a movie and it
17    finally vanishes, what's up underneath it, the
18    first taping comes out.
19    Q: So it's your testimony that when you first
20    received the CD it was different than it is
21    now?
22    A: Yes, sir.
23    Q: And it's been in your possession that entire
24    time?
25    A: Yes, sir.

7

1     Q: And over time, in your possession, it has
2     changed?
3     A: On that ending, yes, sir.
4     Q: And that is on Exhibit Two?
5     A: Yes, sir.
6     Q: Okay. So it's your testimony that what you now
7     have as Exhibit Two has not been tampered with
8     or altered in any way by you?
9     A: No, sir.
10    Q: All right. But it has changed over time while
11    it's been in your possession?

> 12      A: Yes, sir.

Plaintiff Dep. II pp. 6-7 (attached as Exhibit J to Defendants' Motion).  Plaintiff admits that the

audio and video recording he has now is consistent with Defendants' recording:

>                              30
> 18      Q: During the break just now I just showed you a
> 19      copy of the CD that I have of this event. Does
> 20      that appear to be the same thing that we just
> 21      looked at on Exhibits One and Two?
> 22      A: Yes, it does. And I wonder how you did that,
> 23      because it wasn't like that to start with.
> 24      Q: Pardon.
> 25      A: It wasn't like that to start with.
>                              31
> 1       Q: I'm sorry. I didn't understand that.
> 2       A: Y'all's video was not like that to start with.
> 3       Q: And why do you say that?
> 4       A: Because it wasn't. Because I had the VHS tape
> 5       and the original one I saw was not like that.
> 6       Q: Okay. The disc that I just played for you, my
> 7       disc that I just played for you on the same
> 8       computer, through the same equipment that I
> 9       played yours, correct?
> 10      A: Uh-huh (affirmative response.)
> 11      Q: I'm going to have marked as Exhibit Three.
> 12      (Defendant's Exhibit Number Three was marked for
> 13      identification.)

Plaintiff Dep. I pp. 30-31.

In his Motion for Summary Judgment, Plaintiff points to numerous indicators that the audio

and video recording has been fabricated:

> If you slow the video down at twelve eighteen and forty-three seconds to forty
> second-five [sic] seconds, you'll see tire tracks all going in the same direction a [sic]
> Officer Cotton's car.  It took several attempts to get the video just right.
> At the same time, look at the color of the grass, it's green.  It is centipede
> grass and it has a low tolerance for traffic and cold weather. . . . The pictures the
> plaintiff took of the school yard right after the incident shows, the grass is brown or
> tan, not green.

. . . .

> Notice how dark it is in all pictures . . . .  Notice in the video how lit up everything
> is.  This proves that the video and these pictures did not take place on the same night.

Plaintiff's Motion for Summary Judgment pp. 5-6.  Plaintiff also argues that the damage to his

vehicle is not consistent with the incident as it is depicted on the audio and video recording or the

pictures provided to him by counsel for Defendants.  Motion for Summary Judgment p. 7.  Plaintiff

references conversations he, his wife, and his mother had with Butch Morell, who towed his vehicle

from the scene, regarding the location and condition of the vehicle when he arrived on the scene.

However, Plaintiff has not submitted an Affidavit or other sworn statement or evidence to support

these contentions.

Plaintiff attaches to his Motion for Summary Judgment copies of the Uniform Traffic Tickets

issued for each of the charges arising out of the events of November 26, 2006, which show that the

dates of arrest and dates of trial were marked through and changed.  <u>See</u> Plaintiff's Exhibits 2B, 3B,

4B, 5B, 6A, 6B.

Plaintiff also asserts that Constable Jason Stephens was not present during the events of

November 26, 2006, but provided false statements to SLED and false testimony during his

deposition to help bolster Officer Cotton's version of events.

Plaintiff also asserts that numerous other documents were either falsified or improperly

completed, including the Incident Report, SLED Blood Collection Report, the Arrest Warrant, the

Traffic Collision Report, each Defendant's voluntary statement, the Evidence/Property Report and

the Supplemental Incident Report.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary

judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of coming

forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and

inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving

party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may

not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary

judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on

must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."

Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere

allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper

summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting

his or her position through "depositions, answers to interrogatories, and admissions on file, together

with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

-11-

Systems, Inc., 33 F.3d 390 (4ᵗʰ Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4ᵗʰ Cir. 1993); Local

Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Fabrication of Evidence

Before addressing the specific causes of action raised by Plaintiff, it is necessary to address

his contention that the evidence relied upon by Defendants in support of their Motion for Summary

Judgment has been fabricated.  As recognized by the district court for the District of Maryland,

> "A mere speculation that the [evidence] might not be credible is insufficient to
> survive summary judgment." Shah v. Collecto, Inc., No. 2004–4059, 2005 WL
> 2216242, at *16, 2005 U.S. Dist. LEXIS 19938, at *52 (D.Md. Sept. 12, 2005).
> Indeed, plaintiff's bald assertion that defendants' evidence is fabricated does not
> create a " triable issue unless plaintiff produces competent evidence that contradicts"
> defendants' exhibits. Wilson v. Clancy, 747 F.Supp. 1154, 1158 (D.Md.1990); see
> Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ("When
> opposing parties tell two different stories, one of which is blatantly contradicted by
> the record, so that no reasonable jury could believe it, a court should not adopt that
> version of the facts for purposes of ruling on a motion for summary judgment.");
> Holland v. Wash. Homes, Inc., 487 F.3d 208, 213 (4th Cir.2007) ("But there must be
> 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for
> that party. If the evidence is merely colorable, or is not significantly probative,
> summary judgment may be granted.' ") (quoting Anderson, supra, 477 U.S. at
> 249–50, 106 S.Ct. 2505 (citations omitted)), cert. denied, 552 U.S. 1102, 128 S.Ct.
> 955, 169 L.Ed.2d 734 (2008).

Hamilton v. Mayor & City Council of Baltimore, No. ELH-10-241, 2011 WL 3439252, *15 (D.Md.

Aug. 3, 2011).

Although Plaintiff contends that the audio video recording submitted by Defendants has been

fabricated, the evidence he submits is simply not competent to create a triable issue of fact.  As an

initial matter, both Cotton and Stephens aver that the audio and video recording submitted in the

record is a true and accurate copy of the video from Cotton's vehicle and accurately portrays the

events that took place that evening.  Cotton Aff. ¶ 4; Stephens Aff. ¶ 3.  Cotton and Stephens also both aver that they have not tampered with the video in anyway, are not aware of anyone tampering with the tape, and the tape is not a re-creation.  Cotton Aff. ¶ 5; Stephens Aff. ¶ 3.

Further, Plaintiff's "proof" that the audio and video recording has been altered or recreated amounts to nothing more than speculation.  Plaintiff argues that the color of the grass in the video is different from the color of the grass in pictures of the scene taken shortly after the accident.  However, while the difference in color may be indicative of the quality of the video, the pictures, or both, it is insufficient to create a dispute of fact that the recording was altered or recreated.  Further, Plaintiff's self-serving opinion that the damage to his vehicle is inconsistent with the wreck at it is depicted on the recording, without more, such as expert testimony, is insufficient to create a genuine dispute of fact.  Further, Plaintiff appears to argue that the tire tracks on the recording indicate that Defendants made multiple attempts at recreating the accident.  Again, this argument amounts to nothing more than speculation.  Plaintiff presents no evidence to indicate that the tire tracks were created by previous attempts at recreating the video.  In sum, Plaintiff has failed to present sufficient evidence from which a reasonable jury could conclude that the audio and video recording is fabricated.

"[W]here ... the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape."  Iko v. Shreve, 535 F.3d 225, 230 (4th Cir.2008).  Here, although Plaintiff has challenged the video recording, he fails to present sufficient evidence to create a genuine dispute of fact as to its authenticity.  No reasonable juror could believe Plaintiff's version of the events.  See

Scott v. Harris, 550 U.S. 372, 380 (2007).[7]

Plaintiff also argues that the Incident Report completed by Cotton is false and that Stephens was not present at the incident and so any statements given by him are false. However, Plaintiff presents no evidence to support his these allegations. Plaintiff's own self-serving statements, without more, are insufficient to create a genuine dispute of fact. See White v. Boyle, 538 F.2d 1077, 1079 (4th Cir.1976) (conclusory allegations insufficient to avoid summary judgment); National Enterprises, Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir.2000) ("Marvin J. Barnes' self-serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment."); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56."); Fuller v. Cnty. of Charleston, 444 F.Supp.2d 494, 499 (D.S.C.2006) ("It is well established that a court does not abuse its discretion by striking portions of a party's affidavit

---

[7]The facts in Scott are similar to the facts in the present case. As in this case, Scott also involved a high speed police chase, which ended in the plaintiff's car losing control and running down an embankment because of a technique utilized by the police following him. Id. at 375. Harris filed suit under 42 U.S.C. § 1983 claiming Scott used excessive force by applying his push bumper to the rear of Harris' vehicle. Harris told a completely different account than Scott's account. Id. at 379. The district court denied Scott's summary judgment motion, and the Eleventh Circuit affirmed. Id. at 372.

In determining whether the relevant facts surrounding the constitutionality of Scott's action, the Supreme Court acknowledged the differing accounts of the incident and noted the general rule that, when there are differing versions, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion for summary judgment. Id. at 379. However, the Court pointed out that a video of the events existed that clearly contradicted Harris' version of the events. The Supreme Court found that, in considering Scott's motion for summary judgment, the court below should have viewed the facts in the light depicted by the video and audio recording which captured the events underlying the excessive force claim. In doing so, it found that Harris' version of the events was "so utterly discredited by the record that no reasonable jury could have believed him." Id. at 380-381. Based on the events depicted in the video, the Court found that Scott acted reasonably in terminating the car chase.

consisting of conclusory statements or self-serving opinions without objective corroboration."). Thus, Plaintiff's contentions that the Incident Report and statements by Stephens are false are without merit.

### B.    Excessive Force

Plaintiff alleges that Defendant Cotton used excessive force during his arrest.  Protection against force used during arrest is provided by the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.  Graham, 490 U.S. at 396.

Plaintiff claims that Cotton injured him when he ran into him with his patrol car and then jumped on his back and pulled his right arm behind him.  The video submitted by Defendants does not support Plaintiff's claim that Cotton hit Plaintiff with his patrol car.  Further, both Cotton and

Stephens state in their various statements that Cotton maneuvered his patrol car in an attempt to intercept Plaintiff's path on foot and that Plaintiff ran into the patrol car. Plaintiff then continued to flee on foot and Cotton tackled him from behind to subdue him. The video/audio evidence supports the statements of Cotton and Stephens. The only valid question before the court on the issue of excessive force is whether the force used by Cotton when he used his vehicle to block Plaintiff's flight on foot and when he tackled Plaintiff from behind was objectively reasonable.

Courts should consider four factors in determining whether an application of force was unreasonable and excessive: 1) "the severity of the crime at issue"; 2) "whether the suspect poses an immediate threat to the safety of the officers or others"; 3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight"; and 4) "[t]he extent of the plaintiff's injury." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir.2003) (quoting Graham, 490 U.S. at 396) (internal quotation marks omitted). Plaintiff attempted to evade Cotton by fleeing in his vehicle at a high rate of speed and running stop signs in a residential neighborhood–a threat to the safety of others in the neighborhood. Once Plaintiff crashed his vehicle, he continued his attempt to evade arrest by fleeing on foot. It appears that Plaintiff sustained significant injuries during the events of the night in question, but it is not clear whether those injuries arose when Plaintiff ran into the patrol car or when Cotton tackled him or both. In light of these circumstances, Cotton's use of force to stop Plaintiff from continuing to flee was objectively reasonable. Plaintiff fails to create a genuine dispute of material fact to show otherwise. Therefore, summary judgment in favor of Defendants is appropriate on the excessive force claim.[8]

---

[8]In his Complaint in the second action, No. 09-cv-1290-RBH-TER, Plaintiff alleges that the City of Hartsville and the Hartsville Police Department are vicariously liable for Cotton's use of excessive force. It appears that Plaintiff has abandoned this claim. However, it is well-established

### C.     Deliberate Indifference to Medical Needs

Plaintiff also asserts that Cotton, Stephens[9] and Gause, who arrived on the scene shortly after Plaintiff crashed his vehicle, were deliberately indifferent to his serious medical needs by delaying medical assistance for twenty minutes. The standard of medical care given to pre-trial detainees is governed by the due process clause of the Fourteenth Amendment rather than the Eight Amendment's prohibition against cruel and unusual punishment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); see Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, the inquiry as to whether a pre-trial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eight Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing Estelle v. Gamble, 429 U.S. 97, 104-106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "Pre-trial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs. Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir.1992) (citation omitted).

In Estelle, the Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Estelle, 429 U.S. at 105. "Although the

---

a county or city cannot be liable under § 1983 pursuant to respondeat superior principles. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999) ("municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship") (citing Monell v. Department of Social Services, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  Thus, Plaintiff's claim of excessive force against the City of Hartsville and the Hartsville Police Department fail as well.

[9]Plaintiff maintains that Stephens was not at the scene of the accident, thus, it is unclear how he was deliberately indifferent to his medical needs.

-17-

Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988) (citation omitted). Even though the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. See Brown v. Thompson, 868 F.Supp. 326 (S.D.Ga.1994) (collecting cases).

Deliberate indifference is a very high standard. In Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. at 104; Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

It is undisputed that Plaintiff was treated by medical professionals for the injuries he sustained in the incident. However, Plaintiff claims that there was a twenty minute delay by Defendants in calling EMS to respond to the scene. A discrepancy exists in the record as to the exact time this incident occurred. The time stamp on the audio and video recording indicates the recording took place between 00:18 and 00:20. The Incident Report indicates that the incident occurred between 00:25 and 00:32. Incident Report. Nevertheless, the exact timing of the incident is not a material fact. The EMS Report indicates that the call was received at 00:40. Darlington County EMS Patient Care Report (attached as Exhibit 10B to Plaintiff's Motion). Thus, for purposes of this argument, the undersigned will assume that the incident occurred between 00:18 and 00:20 and that

-18-

approximately twenty minutes passed before EMS was called.

Non-medical personnel can be found to have acted with deliberate indifference if they intentionally delay an inmate's access to medical care. Wynn v. Mundo, 367 F.Supp.2d 832, 837 (M.D.N.C.2005) (citing Estelle, 429 U.S. at 104–05). However, an Eighth Amendment violation occurs only if the delay results in some substantial harm to the patient. See Webb v. Hamidullah, 281 Fed.Appx. 159, **7 (4th Cir.2008) (citing Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir.2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993) (same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990) (same)). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir.2004) ("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware].").[10] Plaintiff fails to present evidence to show that the delay in calling EMS was intentional or that the delay itself resulted in any substantial harm. Accordingly, summary judgment in favor of Defendants is appropriate on Plaintiff's claim of deliberate indifference to his medical needs.

---

[10]At least two judges in this district have relied upon Blackmore in holding that a plaintiff does not have to show a detrimental effect of the delay in medical treatment to establish a constitutional violation. See, e.g., Gibson v. Laurens County Detention Center, No. 2:10-2132-RBH-BHH, 2011 WL 3903061, *6 (D.S.C. Jun 14, 2011) (Report and Recommendation); Robinson v. South Carolina Dept. of Corrections, No. 4:10-157-HMH, 2011 WL 692210, *4 (D.S.C. Feb 17, 2011). Under Blackmore, "it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Blackmore, 390 F.3d at 900. Even under this reasoning, Plaintiff's claim fails. A delay of twenty minutes does not rise to the level of a constitutional violation under the facts presented here. Cf. Id. (finding an issue of fact whether the defendants were deliberately indifferent to the plaintiff's medical needs where plaintiff's medical treatment was delayed for two days); Gibson, 2011 WL 3903061, *6 (delay of five days); Robinson, 2011 WL 692210, *4 (delay of three days).

**D.     Qualified Immunity**

Defendants Cotton, Stephens and Gause also argue that they are entitled to qualified immunity from Plaintiff's deliberate indifference claim and Cotton argues that he is also entitled to qualified immunity on the excessive force claim.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. The Harlow Court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998).

In Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights.   Nevertheless, asuuming <u>arguendo</u> Plaintiff's constitutional rights had been violated, the record before the Court shows that as to Plaintiff and the specific events at issue, Defendants Cotton, Stephens, and Gause performed the discretionary functions of his their official duties in an objectively reasonable fashion.  They did not transgress any "bright lines" of statutory or constitutional rights of Plaintiff.  Thus, the undersigned recommends that Defendants Cotton, Stephens and Gause are entitled to qualified immunity on the claims of deliberate indifference and, for Cotton, excessive force.

### E.     Due Process Violations

The Plaintiff maintains that each of the Defendants violated his due process rights in a variety of ways. "The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The first inquiry in any due process challenge, be it substantive or procedural, is whether the plaintiff has been deprived of a protected interest in property or liberty. <u>Tigrett v. The Rector and Visitors of the University of Virgina</u>, 290 F.3d 620, 628 (4th Cir. 2002). The deprivation of the protected interest must be accomplished by state action. <u>Stone v. University of Maryland Medical System Corp.</u>, 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is

irrelevant, for the constitutional right to 'due process' is simply not implicated. Id.

### 1.     Plaintiff's Complaint of Misconduct

Plaintiff claims that Defendants Kemp, Rudick and Pennington violated his due process rights with regard to his complaint of misconduct by the Hartsville Police Department. Amended Complaint, p. 26, ¶ A(3). Plaintiff maintains that he met with Kemp to complain about being hit by Cotton's police car and was told by Kemp to fill out a complaint. Amended Complaint, ¶¶ 93, 94. Plaintiff completed a complaint form, in which he alleged several violations. Amended Complaint, ¶¶ 98, 100, 101. Rudick investigated the complaint and completed a Complaint Review and determined there was no need to turn the matter over for an internal affairs investigation since he found no evidence of wrong doing or policy violations by the police on the night of the incident. Rudick Aff., ¶ 4. Plaintiff attempted to appeal Rudick's findings, but Kemp did not respond to Plaintiff's appeal. Amended Complaint, ¶¶ 110, 111. Plaintiff then met with Hartsville city manager Pennington. Amended Complaint, ¶ 120. Plaintiff maintains that Pennington refused to sign a request that SLED investigate the incident and refused to intervene in the alleged attempted appeal of the Rudick's findings on his complaint. Amended Complaint, ¶¶ 122, 123.

Plaintiff maintains that he has a right to have an "internal affairs investigation" performed because the policies of the Hartsville Police Department provide for an internal affairs process. He believes the existence of the policy "makes it law." Plaintiff's Dep. I pp. 194-95. However, Plaintiff has pointed to no deprivation of a protected interest suffered by him as a result of Defendant's decision not to conduct an internal affairs investigation. Any due process necessary with regard to the criminal charges pending against Plaintiff arising out of the events of November 26, 2006, would be addressed, not through an internal affairs investigation, but through the criminal case pending

against Plaintiff.[11]    Furthermore, even if Plaintiff was entitled to an investigation into the actions of the officers, he has been afforded such process because his complaints against the City of Hartsville Police Department have in fact been investigated by SLED. Plaintiff's Dep.I pp. 187-88. Plaintiff does not argue that he has been deprived due process with respect to the investigation conducted by SLED.  Accordingly, summary judgment in favor of Defendants Kemp, Rudick, and Pennington is appropriate at to this claim.

### 2.    Fabricated Evidence

Plaintiff also claims Defendants Cotton, Stephen and Gause "violated the plaintiff's due process which is protected under the Fourteenth Amendment of the United States Constitution by falsifying police video, incident reports and voluntary statements . . . ." Amended Complaint, p. 26, ¶ A(4). Plaintiff further maintains in his deposition that Defendants Kemp and Pennington participated in recreating the scene of the incident and that Defendant Rudick "re-did" the video. Plaintiff Dep. I pp. 193, 215.

Individuals possess a due process "'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir.2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir.2000)); see White v. Wright, 150 Fed.Appx. 193, 198–99 (4th Cir.2005).  However, there must be some deprivation of a recognized liberty or property interest in order to invoke the protections of the Fourteenth Amendment. See Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir.2000).  As discussed above, Plaintiff fails to present sufficient evidence to create a genuine dispute of fact that the audio

---

[11]Plaintiff challenges the due process afforded him in his criminal proceedings by attacking the alleged false or fabricated evidence against him.  This claim is discussed below.

and video recording, the Incident Report or the voluntary statements have been fabricated. Further, Plaintiff fails to show that he has been deprived of any liberty interest.[12] Accordingly, Plaintiff's due process claim alleging falsified evidence is without merit and summary judgment in favor of Defendants is appropriate.[13]

### 3.     Investigation by Highway Patrol

Plaintiff contends that Defendants violated his constitutional rights by failing to have the South Carolina Highway Patrol investigate this incident. He contends that S.C. Code Ann. §56-5-765 bestows a constitutional right upon Plaintiff to have the Highway Patrol investigate this matter. Defendants contend that the statute is inapplicable because their vehicle was not involved in any collision. Instead, Plaintiff's vehicle was involved in a single car accident. Nonetheless, Plaintiff fails to point to any constitutional injury relating to the failure by the South Carolina Highway Patrol to conduct an investigation. Thus, Plaintiff's claim of a due process violation is without merit.

### F.     State Law Claims

Plaintiff fails to submit sufficient evidence to create a genuine issue of material fact on any of his federal causes of action. Thus, it is recommended that summary judgment be granted as to those claims. If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he

---

[12]The criminal proceedings against Plaintiff were still pending as of the filing of the Motions for Summary Judgment.

[13]In a somewhat related claim, Plaintiff contends that the evidence sheet at the Hartsville Police Department was not properly witnessed or signed and that violates his constitutional rights. However, whether the evidence sheet is properly executed does not violate any right of the Plaintiff's He has not been deprived of life, liberty or property as a result of the absence of a signature on a property sheet.

district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion for Summary Judgment (Document # 121 in 08-3891-RBH-TER and Document # 89 in 09-1290-RBH-TER) be denied, Defendants' Motion for Summary Judgment  (Document # 108 in 08-3891-RBH-TER and Document # 77 in 09-1290-RBH-TER) be granted as to Plaintiff's federal causes of action, and the court decline to exercise supplemental jurisdiction over Plaintiff's state law causes of action.  It is further recommended that 08-3891-RBH-TER be dismissed in its entirety, that the state law claims in 09-1290-RBH-TER be remanded to the Darlington County Court of Common Pleas, and that both cases be closed.

   s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 18, 2012
Florence, South Carolina

**The parties are directed to the important information on the following page.**